## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACOB WHEELER,<br><br>           Plaintiff,<br><br>   v.<br><br>MILLENDO THERAPEUTICS, INC., LOUIS J. ARCUDI III, JULIA C. OWENS, CAROLE L. NUECHTERLEIN, JAMES M. HINDMAN, GEOFF NICHOL, CAROL G. GALLAGHER, JOHN HOWE, III and MARS MERGER CORP.,<br><br>           Defendants, | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Jacob Wheeler ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      Plaintiff brings this action against Millendo Therapeutics, Inc. ("Millendo" or the "Company") and Millendo's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Tempest Therapeutics, Inc. ("Tempest").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement to be filed with the Securities and Exchange Commission ("SEC") on April 13, 2021, with an amended registration statement filed with the SEC on May 4, 2021 and another amended registration statement filed on May 10, 2021 (the "S-4"). The S-4 recommends that Millendo stockholders vote in favor of a

proposed transaction (the "Proposed Transaction") whereby Millendo is acquired by Tempest. The Proposed Transaction was first disclosed on March 29, 2021, when Millendo and Tempest announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Tempest will merge with Mars Merger Corp. with Tempest becoming a wholly owned subsidiary of Millendo. Millendo will issue stock to Tempest stockholders such that Tempest stockholders will hold 81.5% of the combined company, and Millendo stockholders will hold approximately 18.5% of the combined company.

3.      The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections for Millendo and Tempest, and the financial analyses conducted by SVB Leerink LLC ("SVB Leerink"), Millendo's financial advisor.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disseminated to Millendo's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Millendo.

6.      Defendant Millendo is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 110 Miller Avenue, Suite 100, Ann Arbor, Michigan 48104. Millendo common stock trades on NASDAQ under the

ticker symbol "MLND."

7.     Defendant Mars Merger Corp. is a Delaware corporation and a wholly owned subsidiary of Millendo.

8.     Defendant Louis J. Arcudi, III has been President, CEO and a director of the Company since February 1, 2021.

9.     Defendant Julia C. Owens has been Executive Chair of the Board since February 1, 2021 and as a director of the Company since 2012. Defendant Owens is one of Millendo's co-founders and served as President and CEO of the Company from 2012 until February 1, 2021.

10.     Defendant Carole L. Nuechterlein has been a director of the Company since 2017.

11.     Defendant James M. Hindman has been a director of the Company since 2016.

12.     Defendant Geoff Nichol has been a director of the Company since 2019.

13.     Defendant Carol G. Gallagher has been a director of the Company since 2012.

14.     Defendant John Howe, III has been a director of the Company since 2015.

15.     Defendants Arcudi, Owens, Nuechterlein, Hindman, Nichol, Gallagher, and Howe are collectively referred to herein as the "Board" or "Individual Defendants."

16.     Nonparty Tempest is a Delaware corporation with its principal executive offices located at 7000 Shoreline Court, Suite 275, South San Francisco, CA 94080.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

20.    Millendo is a biopharmaceutical company focused on developing treatments for endocrine diseases including Prader-Willi syndrome, congenital adrenal hyperplasia, and menopausal vasomotor symptoms. The Company discontinued the development of its treatments between April 2020 and January 2021.

21.    On March 29, 2021, the Company entered into the Merger Agreement with Tempest.

22.    According to the press release issued on March 29, 2021 announcing the Proposed Transaction:

**Tempest and Millendo Announce Proposed Merger Agreement**

*– Transaction to advance Tempest's targeted oncology pipeline –*
*- Concurrent $30M PIPE financing expected to close with merger -*
*- Companies to host conference call today at 8:30 a.m. ET -*

**South San Francisco, CA, and Ann Arbor, Mich. March 29, 2021** –Tempest Therapeutics, Inc. ("Tempest"), a privately-held clinical-stage oncology company developing potentially first-in-class therapeutics that combine both targeted and immune-mediated mechanisms, and Millendo Therapeutics, Inc. (Nasdaq: MLND) ("Millendo"), announced today that they have entered into a definitive agreement under which Millendo will merge with Tempest in an all-stock transaction. The combined company will focus on advancing Tempest's oncology pipeline of small molecule therapeutics that have the potential to address a wide range of tumors. Upon shareholder approval, the combined company is expected to operate under

the name Tempest Therapeutics and trade on the Nasdaq Capital Market under the ticker symbol TPST.

In support of the merger, Tempest has secured commitments from a premier syndicate of healthcare investors comprised of Versant Ventures, Rock Springs Capital, F-Prime Capital, Monashee Investment Management, Quan Capital, Lyfe Capital, Maven Capital Partners, Lilly Asia Ventures and Eight Roads Ventures for a $30 million PIPE financing that is expected to close concurrent with the completion of the merger. Together with the cash expected from both companies at closing, the net proceeds of the merger and financing are expected to fund the further development of Tempest's three oncology programs and operate the company into early 2023. The financing and merger are expected to close in the first half of 2021.

"We are very pleased to announce this proposed merger with Millendo Therapeutics, which will facilitate the advancement of our broad pipeline of targeted oncology programs, including TPST-1495 and TPST-1120, which are both progressing in the clinic with encouraging early signs of clinical benefit," said Tom Dubensky, Ph.D., chief executive officer of Tempest. "Together with our recently announced clinical collaboration with Roche to investigate TPST-1120 in a randomized frontline hepatocellular carcinoma study, this has been a highly productive quarter for Tempest that sets the stage for additional potential catalysts from our proprietary oncology programs. The transition of Tempest to a public company enhances our ability to fund these potentially important product candidates, as well as consider additional programs with exciting new targets."

Tempest's oncology pipeline is led by two clinical programs, TPST-1495 and TPST-1120, with broad potential across multiple tumor types. TPST-1495 is an antagonist selective for two receptors in the prostaglandin (PGE2) pathway, EP2 and EP4, which promote both tumor growth and the proliferation of suppressive immune cell populations. Tempest is currently evaluating the safety, tolerability, pharmacokinetics, pharmacodynamics, and preliminary anti-tumor activity of TPST-1495 in a multicenter Phase 1a/1b dose and schedule optimization study in patients with advanced solid tumors, with a focus on known prostaglandin-driven tumors such as colorectal cancer, lung adenocarcinoma and urothelial cancer. Tempest expects to report topline data from this study prior to the end of 2021, as well as data from planned monotherapy dose expansion and combination studies in 2022. TPST-1120 is designed to be a selective antagonist of proliferator-activated receptor alpha (PPARα) which is a transcription factor that regulates the expression of target genes that promote angiogenesis and enable a cellular metabolic pathway known as fatty acid oxidation. TPST-1120 has completed monotherapy dose escalation and is progressing through a combination dose escalation study with nivolumab. This summer, Tempest expects F. Hoffmann-La Roche Ltd to initiate a global, randomized Phase 1b/2 clinical study in combination with the standard-of-care first-line regimen of atezolizumab and bevacizumab in patients with advanced or metastatic HCC not previously treated with systemic therapy, pursuant to a

recently announced collaboration between the companies. Tempest expects to report topline data from this study by year-end 2022.

"Millendo Therapeutics' strategic review was a thorough and thoughtful process. We believe we have found a partner that offers not only the greatest value for our existing shareholders but also promising targeted oncology product candidates for patients living with cancer," said Louis Arcudi, chief executive officer of Millendo.

**About the Proposed Merger**

Millendo stockholders are expected to own approximately 18.5% of the combined company and pre-merger Tempest stockholders will own approximately 81.5% of the combined company. The percentage of the combined company that Millendo's stockholders will own as of the close of the transaction is subject to adjustment based on the amount of Millendo's net cash at the closing date.

Upon closing of the transaction, Millendo will be renamed Tempest Therapeutics, Inc. and will be headquartered in South San Francisco, CA. Stephen Brady and Tom Dubensky, Ph.D. will serve as chief executive officer and president, respectively, of the combined company. The merger agreement provides that the Board of Directors of the combined company will be comprised of seven members. The merger agreement has been approved by the Board of Directors of each company, and the transaction is expected to close in the first half of 2021, subject to approvals by the stockholders of each company, the effectiveness of a registration statement filed with the U.S. Securities and Exchange Commission to register the shares of Millendo common stock to be issued in connection with the merger, the completion of a PIPE financing, and other customary closing conditions.

**B. The Materially Incomplete and Misleading S-4**

23.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Millendo stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

24.     On May 10, 2021, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the other Millendo

stockholders. Without such information, Plaintiff and the other Millendo stockholders cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

### Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts

25. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of SVB Leerink's fairness opinion, SVB Leerink reviewed "certain internal information, primarily related to expense forecasts, furnished to SVB Leerink by the managements of Millendo and Tempest, respectively." No expense forecasts were disclosed in the S-4, which notes that neither Millendo nor Tempest provided financial projections to SVB Leerink. No such financial projections are disclosed in the S-4. Given that Tempest is a private company in which Millendo stockholders will soon have ownership, it is imperative that they are provided information to evaluate the value of Tempest and evaluate the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning SVB Leerink's Financial Analyses

26. The S-4 fails to disclose the basis for SVB Leerink to include $30 million in committed financing in Tempest's equity value. Furthermore, with respect to the *Selected Biopharma Public Companies Analysis,* the S-4 fails to disclose the fully diluted number of shares outstanding. The S-4 also fails to disclose the basis for applying a 25% liquidity discount.

27. The S-4 states that the Board committed a thorough review of strategic alternatives and determined that the Proposed Transaction is "more favorable" to Millendo stockholders than a liquidation. Yet the S-4 fails to disclose any liquidation analyses.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

28.     The S-4 also fails to disclose material information concerning the sales process. For example, SVB Leerink contacted 107 potential counterparties in June and July 2020 at the direction of the Board. The S-4 does not disclose whether any of these potential parties were financial sponsors, or whether Tempest was one of these parties. The S-4 further fails to disclose how many of these potential parties engaged in discussions or negotiations with Millendo, whether any entered into nondisclosure agreements with Millendo, and whether Millendo received any indications of interest beyond the letter of intent with Party A. In addition, the S-4 fails to disclose whether there were any discussions or meetings between Party A and Millendo between entering into the letter of intent on November 11, 2020 and Party A's termination of discussions on December 12, 2020. The S-4 also fails to disclose the basis for Party A's decision to terminate discussions.

29.     The Board opted to try again in the beginning of 2021, after deciding to end investment in its last candidate. SVB Leerink contacted 102 potential counterparties between January 15, 2021 and February 18, 2021. The S-4 does not disclose how many of these parties had been contacted the year before, and the basis for contacting five fewer parties. The S-4 also does not disclose whether Tempest was one of the contacted parties.

30.     The Company received 26 indications of interest on January 29, 2021. The S-4 only discloses details from the indications of interest submitted from Tempest, Party B, Party C, Party D, Party E and Party F. Members of Millendo's management and SVB Leerink selected the top ten potential parties from the submitted indications of interest, but the S-4 only identifies six of the parties.

31.     The S-4 fails to disclose which nondisclosure agreements Millendo entered into contain standstill provisions. While all ten potential parties entered into nondisclosure agreements, only "in certain cases" did they contain a standstill. The S-4 does not disclose which agreements contained standstill agreements and the basis for selecting only some agreements for such a provision. The S-4 further fails to disclose the basis for waiving the standstill agreements on April 12, 2021, when the Merger Agreement was entered into March 29, 2021.

32.     The Board created a Transaction Committee in July 2020, and the S-4 states that the Transaction Committee had "authority to oversee Millendo management in connection with and evaluate any potential strategic transaction." The S-4 does not disclose the exact breadth of the Transaction Committee's authority, or whether it changed when the Transaction Committee was reconstituted at the January 22, 2021 Board meeting.

33.     SVB Leerink states in its fairness opinion that it provided "certain investment banking services to Millendo from time to time." The S-4 does not disclose what services were provided to Millendo in the two years prior to SVB Leerink's delivery of its fairness opinion, and the compensation received for those services. The S-4 also fails to disclose whether SVB Leerink provided any services to Tempest in that same time period and, if so, what compensation SVB Leerink received.

34.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

35.     In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

36.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

37.     Further, the S-4 indicates that on March 28, 2021, SVB Leerink reviewed with the Board its financial analysis of the Proposed Transaction and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Proposed Transaction was fair, from a financial point of view, to Millendo stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning SVB Leerink's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

38.     Plaintiff is immediately threatened by the wrongs complained of herein and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that they will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Defendants have filed the S-4 with the SEC with the intention of soliciting Millendo

stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorize the dissemination of the S-4, which fails to provide the material information referenced above.

41.     In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Millendo, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

42.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43.     Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) financial projections for Millendo and Tempest; (ii) the value of Millendo and the financial analyses performed by SVB Leerink in support of its fairness opinion; and (iii) the sales process.

44.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that SVB Leerink reviewed and discussed its financial analyses with the Board on March 28, 2021, and further states that the Board

relied upon SVB Leerink's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

45.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the other Millendo stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Millendo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Millendo and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

50.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and his counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

B.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 21, 2021              **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*

14